IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL CODE COUNCIL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UPCODES, INC.; <br> GARRETT REYNOLDS; and <br> SCOTT REYNOLDS, <br><br> Defendants. | Civil Action No. 1:22-cv-10815 <br><br> **JURY TRIAL REQUESTED** |

## COMPLAINT

International Code Council, Inc. by and through its undersigned counsel, brings this action against UpCodes, Inc., Mr. Garrett Reynolds and Mr. Scott Reynolds, and alleges as follows.

## INTRODUCTION

1. Plaintiff International Code Council, Inc. ("ICC") is a not-for-profit corporation that is dedicated to building safety. In furtherance of its mission, ICC develops model codes and other standards used in the design, build, and compliance process to construct safe, sustainable, affordable, and resilient structures. ICC's mission is to provide the highest quality codes, standards, products, and services for all concerned with the safety and performance of the built environment. ICC furthers its non-profit mission by making its model codes and other standards available to the public to view for free on its website.

1

2. Defendants UpCodes, Inc., Mr. Garrett Reynolds, and Mr. Scott Reynolds (collectively, "Defendants") have built a for-profit business on the infringement of ICC's copyrighted works. Defendants Garrett and Scott Reynolds founded and continue to operate UpCodes' business by commercially exploiting ICC's copyrighted works. UpCodes targets the same industry professionals as ICC, offering them unlicensed and unauthorized free versions of ICC's copyrighted works and derivative versions thereof. UpCodes then sells competing "premium" services including notation and multi-user collaboration tools. UpCodes hopes to distract from these facts by claiming that its mission is simply providing public access to codes and standards. But ICC's copyrighted works are already widely and freely available from ICC. Defendants' true purpose is to line the pockets of its owners and investors by cannibalizing ICC's laboriously created works and jeopardizing ICC's continued and future ability to provide its invaluable services in assistance to various states and localities when crafting sound and safe building codes and standards.

3. ICC brings this lawsuit to prevent Defendants from continuing to profit off of ICC's copyrighted works.

**PARTIES**

4. Plaintiff ICC is a not-for-profit corporation organized under the laws of the State of Delaware, with its principal place of business at 500 New Jersey Avenue, N.W. Washington, D.C. 20001.

5. Defendant UpCodes, Inc. ("UpCodes") is a corporation organized and existing under the laws of Delaware, which lists its principal place of business at 340 South Lemon Avenue, #9050, Walnut, CA 91789.

6. Upon information and belief, Mr. Garrett Reynolds is an individual with an address of 391 Valencia St, Apt. 404, San Francisco, CA 94103 and is co-founder, owner, Secretary and Chief Technology Officer of Defendant UpCodes, Inc.

7. Upon information and belief, Mr. Scott Reynolds is an individual with an address of 238 Perry St, Mill Valley, CA 94941 and is the co-founder, Chief Executive Officer, and Chief Financial Officer of Defendant UpCodes, Inc.

## JURISDICTION AND VENUE

8. This is an action for infringement of federally registered copyrights in violation of 17 U.S.C. § 501 and for alteration or removal of copyright management information in violation of 17 U.S.C. § 1202.

9. This court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a).

10. Venue is proper in this court pursuant to 28 U.S.C. § 1400(a) because Defendants may be found in this district.

## PLAINTIFF'S COPYRIGHTED WORKS

11. ICC develops and maintains model codes and standards, known as the International Codes or I-Codes, through a consensus process that is designed to protect the health, safety and welfare of people around the world and to encourage sustainability and water and energy conservation.

12. The I-Codes include the International Building Code, International Residential Code for One and Two-Family Dwellings, International Existing Building Code, International Fire Code, International Plumbing Code, International Mechanical Code, International Fuel Gas Code, International Property Maintenance Code; International Energy Conservation Code; International Swimming Pool and Spa Code; International Wildland-Urban Interface Code; ICC Performance

Code for Buildings and Facilities; International Private Sewage Disposal Code; International Zoning Code; and International Green Construction Code.

13. ICC also develops other standards on a wide variety of subject matters concerning the built environment, including its ICC Standard for Accessible and Usable Buildings and Facilities ("ICC A117.1").

14. ICC has obtained Certificates of Copyright Registration from the Registrar of Copyrights for each of the I-Codes and the other standards listed in Exhibit A hereto (collectively "Plaintiff's Copyrighted Works").  Exhibit A lists the I-Codes and standards that Defendants have infringed by the acts complained of herein and identifies by number the Certificates of Registration issued to ICC for each of the relevant I-Codes and standards.

15. To develop its I-Codes, ICC coordinates code development committees composed of subject matter experts, regulators, and interest groups to create a transparent and inclusive consensus-based process.  Because each code addresses technical and complex issues, ICC relies on focused, skilled committees to consider testimony presented at hearings and to act on code change proposals.

16. ICC's goal is to conduct a process open to all parties with safeguards to avoid domination by proprietary interests.  ICC's members and interested stakeholders participate in the development of ICC's codes through service on ICC's more than 40 technical committees, including 17 committees that conduct hearings on proposed code changes.

17. ICC revises the I-Codes on a regular basis based on changes in technology and best practices.  New versions may add content that responds to changes in the industry or may expand and improve the codes to make them more effective.  ICC publishes new versions of each of the I-Codes every three years.

18. ICC also contracts with states, like New York, to publish custom codes that incorporate amendments and made by states or local governments displayed with significant portions of text from the model I-Code and other standards that have been adopted by the jurisdiction ("Custom Codes").

19. ICC incurs substantial costs and expends substantial resources to provide the administrative, technical, and other support necessary to produce the I-Codes, ICC standards, and/or to publish the Custom Codes. Among other costs, ICC must pay for the salary and benefits for its administrative and expert staffs, office space, meeting facilities, information technology that allows for online participation in the development process, outreach and education efforts, and the cost of publishing Plaintiff's Copyrighted Works and the Custom Codes.

20. To recover some portion of these substantial costs of development, ICC sells copies of the I-Codes, Custom Codes, and its other standards in hard copy and electronic versions and through its online store. Sales of the I-Codes, Custom Codes, and other ICC standards account for a significant portion of ICC's total revenue. ICC also offers enhanced services through its premiumACCESS tool, which provides users with access to additional features such as full access to commentaries, and tools to highlight, bookmark, annotate, and collaborate with multi-user functionality.

21. ICC's heavily relies on the revenues it earns from the sale and licensing of publications containing its copyrighted works.

22. ICC provides a valuable public service by developing the model I-Codes and standards and publishing the model I-Codes, the Custom Codes, and other standards.

23. ICC's I-Codes and other standards offer substantial advantages to building professionals, engineers, states and local governments, and the public. For example, architects,

engineers, designers, manufacturers and contractors can work with a relatively consistent set of requirements throughout the United States.

24. Additionally, because of ICC's I-Codes and other standards, uniform education and certification programs can be used across the country and even around the world.

25. Individual jurisdictions do not have the expertise or financial ability to develop high-quality codes or standards, to keep such codes and standards up to date with developments in technology and in the marketplace, or to comply with the demanding requirements for creating voluntary consensus codes or standards. State legislatures can adopt certain provisions of the I- Codes or other ICC standards or can incorporate such provisions by reference instead of creating their own codes or standards, which allows them to develop a comprehensive regulatory scheme quickly and with limited costs.

26. ICC recognizes the importance of ensuring that the public has meaningful access to the I-Codes and its other standards and therefore makes them reasonably available to the public. For example, ICC makes the I-Codes available for free viewing in read-only form on its website.

27. Like its model I-Codes and other standards, ICC makes the Custom Codes, including building codes for New York, available for free to view on its website. *See, e.g.*, https://codes.iccsafe.org/codes/new-york.

28. ICC owns the copyrights in the I-Codes and its other standards, including Plaintiff's Copyrighted Works.

29. States or cities that adopt building codes that contain significant amounts of content from the I-Codes and other ICC standards recognize that their building codes are based on the copyrighted works owned by ICC. For example, the copyright page of the 2022 New York City Building Code states: "The *2022 New York City Building Code* contains substantial copyrighted

material from the 2015 *International Building Code®*, which is a copyrighted work owned by the International Code Counsel, Inc."

30. ICC's I-Codes, Custom Codes, and other standards bear a copyright notice indicating among other things that, for the I-Codes and ICC standards, ICC owns the copyright in the work, and for ICC's Custom Codes, that the work contains (1) portions of the I-Codes in which ICC owns the copyright, (2) material that is derived from the I-Codes in which ICC owns or jointly owns the copyright, and (3) wholly original materials prepared by the relevant jurisdiction in which ICC does not claim copyright.

## DEFENDANTS AND THEIR INFRINGING ACTIVITIES

31. Garrett Reynolds and Scott Reynolds founded UpCodes in 2016.

32. Together, Garrett Reynolds and Scott Reynolds developed the business model for UpCodes. Upon information and belief, they are directly and personally involved in all aspects of UpCodes' business, including decisions concerning what content to reproduce, distribute, and/or display on the website up.codes (the "UpCodes Website").

33. Defendant UpCodes has developed an internet-based platform that allows customers to view and print a variety of building codes and standards, including the building codes and standards that reproduce and display substantial portions of the I-Codes, Custom Codes, and ICC standards.

34. Defendants' website reproduces and displays substantial portions of Plaintiff's Copyrighted Works, including portions that impose no binding legal obligations and are instead non-mandatory or informational materials.

35. Defendants create their copies of the I-Codes, ICC standards, and/or Custom Codes by purchasing hardcopies or obtaining digital copies of the I-Codes, ICC standards, and/or Custom Codes for the purpose of posting them on the UpCodes Website and mobile web platform.

36. Upon information and belief, both Scott and Garrett Reynolds personally and directly participate in the decision to post Plaintiff's Copyright Works on the UpCodes website and/or scanning and/or posting I-Codes, ICC standards, and Custom Codes to the UpCodes website and mobile web platform.

37. Defendants' process for creating their unauthorized copies of the I-Codes, ICC standards, and Custom Codes introduces errors into the codes and standards.  By scanning hard copies and digital copies of the ICC's I-Codes, ICC standards, and Custom Codes to create the content for their website and mobile web platform, Defendants introduced errors inherent in the scanning process.

38. UpCodes displays and distributes significant amounts of Plaintiff's Copyrighted Works and Custom Codes through the UpCodes Website and mobile web platform.

39. UpCodes identifies Plaintiff's Copyrighted Work by displaying the title and/or well-known abbreviated names for ICC's publications.[1]



40. UpCodes utilizes a "freemium" business model that seeks to attract users by offering a "free" service, where a significant amount of Plaintiff's Copyrighted Works and Custom Codes can be viewed, downloaded, and further distributed by members of the public at no cost. After users engage in the "free" service, they are introduced to UpCodes' "premium" offerings.

---

[1] The screenshot below was taken from https://up.codes/viewer/alabama/ibc-2021/chapter/1/scope-and-administration#1 on December 5, 2022.  Highlighted text is added for emphasis.

In addition to the same unauthorized distribution and display of Plaintiff's Copyrighted Works and Custom Codes, the premium subscription includes unauthorized derivative works and "premium" features such as searchable codes, bookmarking, and multi-user collaboration features.

    41.    One of the "premium" features that UpCodes offers is the ability to display local amendments in a different color than the model I-Codes. This feature makes it easier for individuals interested in the model I-Codes (which UpCodes sometimes refers to as the "base codes"), rather than local amendments, to easily view the model I-Code language.[2]



    42.    UpCodes website and mobile web platform contain significant amounts of content from Plaintiff's Copyrighted Works or substantially similar versions thereof (collectively referred to herein as "Infringing Materials").

---

[2] The screenshot below was taken from https://up.codes/viewer/alabama/ibc-2021 on November 30, 2022.

43. Users can print entire chapters, sections or subsections of the Infringing Materials from the UpCodes Website and mobile web platform.

44. In some instances, the Infringing Materials acknowledge ICC's ownership of the copyright in its codes and standards.[3]



---

[3] The screenshot below was taken from https://up.codes/viewer/minnesota/mn-accessibility-code-2020/chapter/2020_minnesota_accessibility_code__1_/2020-minnesota-accessibility-code#2020_minnesota_accessibility_code__1_ on December 3, 2022.

45.     Although ICC's I-Codes and Custom Codes each display a copyright notice, in some instances Defendants remove the copyright notices on the Infringing Materials.



---

[4] The screenshot below was taken from https://codes.iccsafe.org/content/NYSBC2020P1/copyright on December 14, 2022.



---

[5] The screenshot below was taken from https://up.codes/viewer/new_york/ibc-2018 on December 14, 2022.

46.     The business model of Defendant UpCodes relies on the reproduction, display, and distribution of Infringing Materials to the public through the UpCodes website and mobile web platform.  Upon information and belief, as the co-founders and officers of Defendant UpCodes, and at least Defendants Garret Reynolds and Scott Reynolds knew about, substantially participated in, and authorized UpCodes' copyright infringement.

## REMOVAL OF ICC'S COPYRIGHT NOTICES

47.     Each of Plaintiff's copyrighted works bears a copyright notice in favor of ICC.

48.     Defendant UpCodes removed the copyright notice from certain of Plaintiff's copyrighted works displayed on UpCodes' Website and mobile web platform.  The copyrighted works for which the copyright notice has been altered or otherwise removed (collectively "Altered Works") are listed in Exhibit B.

49.     Upon information and belief, both Scott and Garrett Reynolds personally and directly participate in the decision to remove and/or the removal of Plaintiff's copyright management information from the UpCodes website and mobile web platform.

## COUNT I (AGAINST ALL DEFENDANTS)
## COPYRIGHT INFRINGEMENT

50.     Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs of the Complaint as if fully set forth herein.

51.     ICC owns registered copyrights for the I-Codes and other standards, which are listed in Exhibit A.

52.     The Infringing Materials contain content that is wholly copyrightable subject matter under the laws of the United States.

53.     Defendants had access to each of Plaintiff's Copyrighted Works.

54. Notwithstanding ICC's ownership of the copyright in Plaintiff's Copyrighted Works, Defendants copied and created derivative works based upon Plaintiff's Copyrighted Works and displayed and distributed copies of the Infringing Materials through the UpCodes website and mobile web platform without ICC's consent.

55. The Infringing Materials are identical, or substantially similar, to Plaintiff's Copyrighted Works.

56. By copying and creating derivative works based upon Plaintiff's Copyrighted Works and displaying and distributing the Infringing Materials through the UpCodes website and mobile web platform, Defendants have infringed ICC's copyright in Plaintiff's Copyrighted Works. Specifically, Defendants have violated the exclusive right of ICC to reproduce, distribute, display, and make derivative works of its copyrighted works under 17 U.S.C. § 106. The infringement of each of Plaintiff's Copyrighted Works constitutes a separate act of copyright infringement.

57. Defendants' copyright infringement has been knowing, willful, and/or intentional.

58. Defendants Garrett Reynolds and Scott Reynolds are the moving, active, conscious force behind UpCodes' copyright infringement and are subject to personal liability for UpCodes' copyright infringement.

59. Defendants' copyright infringement has caused and will continue to cause monetary damage to ICC.

60. Defendants' copyright infringement has caused and will continue to cause irreparable harm to ICC for which there is no adequate remedy at law. ICC is entitled to, and seeks, injunctive relief as a result thereof pursuant to 17 U.S.C. § 502.

## COUNT II (AGAINST ALL DEFENDANTS)
## ALTERATION OR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION UNDER 17 U.S.C. § 1202

61. ICC realleges and incorporates herein by reference the foregoing Paragraphs of the Complaint as if fully set forth herein.

62. Each of ICC's copyrighted works bears copyright notices identify ICC as the owner of the Altered Works.

63. The inclusion of a copyright notice, including the identity of ICC, constitutes "copyright management information" as defined in 17 U.S.C. § 1202(c).

64. Defendants, without the authority of ICC, intentionally removed and/or altered and have caused and induced others to remove and/or alter such copyright management information for the Altered Works and have thereafter distributed the improperly modified Altered Works, having reasonable grounds to know that such acts will induce, enable, facilitate or conceal an infringement of copyright in violation of 17 U.S.C. § 1202(b)(1) and (3).

65. Defendants' removal or alteration of copyright management information from the Altered Works and their subsequent distribution of the improperly modified Altered Works was, and is, willful and intentional, and was, and is, executed with full knowledge of ICC's rights under copyright law, and in disregard of ICC's rights.

66. ICC is entitled to recover its actual damages suffered as a result of each violation and any profits of Defendants attributable to each violation and not taken into account in computing actual damages, or, at ICC's election, statutory damages pursuant to 17 U.S.C. § 1203(c).

67. ICC is entitled to recover costs and attorney's fees from the Defendants pursuant to 17 U.S.C. § 1203(b)(4) and (5)

68. Defendants' violations of 17 U.S.C. §§ 1203(b)(1) and (3) have caused, and unless restrained by this Court, will continue to cause, irreparable injury to the ICC not fully compensable in monetary damages. Pursuant to 17 U.S.C. §§ 1203(b)(1), ICC is entitled to an injunction enjoining Defendants from further such violations.

## JURY DEMAND

ICC hereby demands that all issues so triable be determined by a jury.

## PRAYER FOR RELIEF

Wherefore, ICC prays for judgment against Defendants as follows:

1) That Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds and their officers, agents, servants, employees, and attorneys, and all those in active concert with it or in participation with them, be preliminarily and permanently enjoined from all further unauthorized reproduction of Plaintiff's Copyrighted Works and any other codes, standards or materials published by ICC, preparation of derivative works based upon any codes, standards or materials published by ICC, and distribution or display of copies of the Infringing Materials or any codes, standards or materials published by ICC by any means or method.

2) That Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds and their officers, agents, servants, employees, and attorneys, and all those in active concert with it or in participation with them, be preliminarily and permanently enjoined from all further alteration or removal of ICC's copyright management information and all further distribution of the Altered Works.

3) That the Defendants be directed to file with the Court and serve upon ICC, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which Defendants have complied with the provisions set forth in Paragraphs 1 and 2 of this Prayer for Relief.

4) That ICC be awarded its actual damages and any profits earned by Defendants from the sale of the Infringing Materials or derivative works based on Plaintiff's Copyrighted Works or, at ICC's election, statutory damages of up to $150,000 per work infringed.

5) That ICC be awarded its actual damages and any profits earned by Defendants from the alteration or removal of copyright management information from the Altered Works or, at ICC's election, statutory damages of up to $25,000 for each violation.

6) That the Court declare that Defendants' copyright infringement was willful.

7) That the Court declare that Defendants are jointly and severally liable for all damages assessed against any Defendant.

8) That ICC be awarded pre-judgment interest on all damages awarded by the Court.

9) That ICC be entitled to recover its reasonable attorneys' fees and costs of suit.

10) That ICC be awarded any and all such other and further relief as this Court shall deem just and proper.

Respectfully submitted,

Dated: December 22, 2022

By: */s/ J. Kevin Fee*
**DLA PIPER LLP (US)**
J. Kevin Fee (NY Bar No. 2777639)
Jane W. Wise (NY Bar No. 5859707)
500 Eighth St NW
Washington, DC 20004
kevin.fee@dlapiper.com
jane.wise@dlapiper.com

Gabrielle C. Velkes (NY Bar No. 5923206)
1251 Avenue of the Americas, 27th Fl.
New York, New York 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff International Code Counsel, Inc.*